Filed 12/21/21  P. v. Sparks CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>WENDELL H. SPARKS,<br><br>Defendant and Appellant. | D079034<br><br><br>(Super. Ct. No. 78647) |

APPEAL from an order of the Superior Court of Santa Clara County, Daniel T. Nishigaya, Judge.  Affirmed.

Kevin D. Sheehy, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Rene A. Chacon and Julia Y. Je, Deputy Attorneys General, for Plaintiff and Respondent.

Wendell H. Sparks appeals from the trial court's order denying his petition under Penal Code section 1170.95[1] to vacate his first degree murder conviction and obtain resentencing. Sparks contends that the trial court procedurally erred by concluding that he failed to make a prima facie case for relief without first appointing counsel to represent Sparks, and without allowing the parties to submit briefing. Sparks further contends that the procedural errors were prejudicial because there is a reasonable probability the trial court would have reached a different conclusion if appointed counsel was able to present briefing, along with any additional documents from the record of conviction, to establish that Sparks may have been convicted of first degree murder based on the natural and probable consequences doctrine.

We conclude that, based on the jury instructions and the verdict forms, there is no reasonable probability that Sparks could make a prima facie case for relief, even if counsel was appointed and given the opportunity to present briefing and submit additional documents from the record of conviction. Accordingly, we affirm the order denying the petition for relief under section 1170.95.

I.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Sparks's Conviction for First Degree Murder and Conspiracy to Commit Murder*

In 1984, Sparks was sentenced to life in prison without the possibility of parole after being convicted of first degree murder (§ 187), conspiracy to commit murder (§§ 182, 187), conspiracy to obstruct justice (§ 182, subd. 5), attempted murder (§§ 664, 187), and kidnapping (§ 207). For the murder

_____

[1] All further statutory references are to the Penal Code.

2

conviction, the jury made a true finding on two special circumstances: that the murder was for financial gain (§ 190.2, subd. (a)(1)), and that the murder was committed while lying in wait (§ 190.2, subd. (a)(15)).

In 1987, the Court of Appeal issued an opinion affirming Sparks's conviction and rejecting his petition for habeas corpus (the 1987 Opinion). The 1987 Opinion described the factual basis for the murder conviction: "Officers of the San Jose Police Department were dispatched to the site of a reported shooting on September 26, 1980, at 7:40 a.m. Upon arrival, the police found the victim, Linda Marie Taylor, in a parked Datsun shot three times at close range with a shotgun. Witnesses were interviewed, and several reported seeing a light brown van parked at the children's center; the van speedily left after what sounded like three loud shots. Juanita Hoffman . . . observed a van pull up to the curb near the children's center and recognized the van's driver as Wendell Sparks. Thereafter, Ms. Hoffman observed a yellow Datsun drive to the entrance of the children's center and the female driver escort a child inside. When the woman returned to her car, the van driven by [Sparks] approached, blocking Ms. Hoffman's view. After what sounded like three shots, the van drove off." The 1987 Opinion further explained that another acquaintance of Sparks recognized him as the driver of the van and saw a man she did not recognize in the passenger seat of the van.

As described in the 1987 Opinion, "Karo Lynne Washington was acquainted with [Sparks] and codefendant, Myron Word. On the morning of the murder, Ms. Washington was awakened when [Sparks] and Word entered her apartment, carrying something long in a brown case. Ms. Washington overheard [Sparks] telephone someone to get up, go around the corner and see what happened. Word admitted to Ms. Washington that he was paid to

3

participate in the killing of Linda Taylor because she was messing around on her husband." The jury also heard testimony that Sparks had kidnapped a woman, told her that he was paid to kill her because "he killed people for a living," but then let her go when she convinced him he had the wrong person.

The information charging Sparks also included charges against Sparks's codefendant Myron Word. On the verdict form finding Sparks guilty of conspiracy to commit murder, the jury made findings that another man (presumably Word) was the actual shooter during the murder, while Sparks drove the van.[2] Word entered a plea of guilty to first degree murder and conspiracy to commit murder after trial commenced but before a jury was selected and sworn, and the jury was told about that fact during Sparks's trial.

B.      *Sparks's Petition for Relief Under Section 1170.95*

On May 26, 2020, Sparks, in propria persona, filed a petition to vacate his murder conviction and to be resentenced under section 1170.95. On his petition, he marked boxes next to the following pre-printed statements: (1) a complaint, information, or indictment was filed against him that allowed the prosecution to proceed under a theory of felony murder or under the natural and probable consequences doctrine; (2) at trial, he was convicted of first or second degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine; (3) he could not now be convicted of first or

---

[2]      Specifically, in making a true finding on one of the overt acts alleged in the count charging conspiracy to commit murder, the jury found: "We further find to be true Overt Act No. Six, that in pursuance of said conspiracy and to effect its object, Wendell Herbert Sparks, did drive away in a Dodge Van with another man after the other man shot and killed Linda Marie Taylor." (Capitalization omitted.)

4

second degree murder because of changes to sections 188 and 189, effective January 1, 2019; and (4) he requested the appointment of legal counsel.

On August 10, 2020, the trial court held an unreported conference on Sparks's petition, which was conducted remotely over Skype due to the pandemic. Although the conference was unreported, a settled statement as to what occurred during the conference was later agreed upon by the trial court and participating counsel.[3] Specifically, at the August 10, 2020 conference, a Deputy District Attorney appeared and an attorney from the Public Defender's Officer was present, although he was not formally appointed to represent Sparks. At the conference, the trial court explained that although it had received informal email correspondence from counsel prior to the conference, it would not be considering any arguments that counsel might have asserted in the e-mail correspondence. The trial court indicated that it would, however, review any of the documents from the record of conviction that had been provided to it, including the jury instructions and verdict forms from Sparks's trial.

On September 14, 2020, the trial court issued an order stating that "[h]aving reviewed the record of conviction, this court finds [Sparks] is ineligible for relief as a matter of law." Based on specific citations to the jury instructions and verdict forms, the trial court concluded that "the jury found both that [Sparks] acted with express malice, in convicting him of first degree

---

[3] In response to a motion to augment filed by appellate counsel for Sparks to obtain a record of the August 10, 2020 Skype conference, the Court of Appeal issued an order returning this matter to the trial court to settle the record and to hold any and all proceedings necessary to create a transcript of the Skype conference. On November 10, 2020, the trial court held a reported hearing with the counsel who participated in the Skype conference. The reporter's transcript from the November 10, 2020 hearing describes the substance of what occurred during the Skype conference.

murder, and that [Sparks] harbored a specific intent to kill while conspiring to commit murder." Therefore, although the jury was instructed on the natural and probable consequences doctrine, "[Sparks] was not convicted of murder under the natural and probable consequences doctrine and [Sparks] cannot make a prima facie showing that he could not be convicted of first or second degree murder under current law. For these reasons, [Sparks] is ineligible for resentencing under section 1170.95 as a matter of law."

Sparks filed a notice of appeal from the order denying his petition.

## II.

## DISCUSSION

A. *The Enactment of Senate Bill No. 1437*

Effective January 1, 2019, Senate Bill No. 1437 (Stats. 2018, ch. 1015; (Senate Bill 1437)) "eliminated natural and probable consequences liability for murder as it applies to aiding and abetting, and limited the scope of the felony murder rule. (. . . §§ 188, subd. (a)(3), 189, subd. (e), as amended by Senate Bill 1437.)" (*People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).)

More specifically, the felony murder rule was narrowed by amendments to section 189, which now provides that to be liable under a felony murder theory, a defendant must fall into one of the following categories of people: (1) the actual killer; (2) although not the actual killer, a person who intended to kill and assisted the actual killer in the commission of first degree murder; or (3) a major participant in the underlying felony who acted with reckless indifference to human life. (§ 189, subd. (e)(1)-(3).)

The natural and probable consequences doctrine was eliminated as a basis for murder by amending section 188, which now provides, "Except as stated in subdivision (e) of Section 189 [governing felony murder], in order to be convicted of murder, a principal in a crime shall act with malice

6

aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3); see also *People v. Gentile* (2020) 10 Cal.5th 830, 851 (*Gentile*) [holding that "section 188[, subd. ](a)(3) bars conviction for second degree murder under a natural and probable consequences theory"].)[4]

Further, Senate Bill 1437 enacted section 1170.95, under which "[a] person convicted of felony murder or murder under a natural and probable consequences theory may file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts" if the petitioner could not have been convicted of murder because of Senate Bill 1437's changes to sections 188 and 189. (§ 1170.95, subd. (a).)[5]

When presented with a facially sufficient petition seeking relief under section 1170.95, the trial court must first determine whether the petitioner has made a prima facie case for relief. (§ 1170.95, subd. (c).)  As our Supreme Court has recently clarified, before a trial court makes that determination, it must appoint counsel for the petitioner, if requested, and must allow the

---

[4]     In 2014 our Supreme Court held that "a defendant cannot be convicted of *first degree* premeditated murder under the natural and probable consequences doctrine." (*People v. Chiu* (2014) 59 Cal.4th 155, 167, italics added.)  Senate Bill 1437 effectively extended that prohibition to second degree murder as well.

[5]     The Legislature recently amended section 1170.95, effective January 1, 2022.  (Sen. Bill No. 775 (2021-2022 Reg. Sess.); Stats. 2021, ch. 551, § 2.) The amended statute provides that a petition may be filed by "[a] person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter." (*Ibid.*)

parties to submit briefing. (*Lewis*, *supra*, 11 Cal.5th at pp. 962-963.)[6] As long as the trial court has appointed counsel if requested by the petitioner, "the parties can, and should, use the record of conviction to aid the trial court in reliably assessing whether a petitioner has made a prima facie case for relief under subdivision (c)." (*Lewis*, at p. 972.)

When reviewing any part of the record to assess whether a petitioner has made a prima facie case, "at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Lewis*, *supra*, 11 Cal.5th at p. 972.) However, " 'if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."'" (*Id.* at p. 971.) If the court determines that the petitioner has established a prima facie case, it is required to issue an order to show cause and hold a hearing to determine whether to vacate the murder conviction. (§ 1170.95, subds. (c), (d)(1).)

B.    *The Trial Court Did Not Follow the Required Procedure Prior to Ruling That Sparks Did Not Make a Prima Facie Case for Relief, But the Error Is Subject to Harmless Error Review Under the Standard for State Law Error*

When the trial court ruled on Sparks's petition, our Supreme Court had not yet issued an opinion specifying the procedures that must be followed before a trial court decides whether a petitioner has made a prima facie case for relief under section 1170.95. The People concede in their supplemental letter briefing, filed after our Supreme Court issued *Lewis*, *supra*, 11 Cal.5th

---

6      The amendments to section 1170.95, effective January 1, 2022, effectively codify our Supreme Court's holding in *Lewis*, *supra*, 11 Cal.5th 952, that the trial court must appoint counsel (if requested) and allow the parties to submit briefing before determining whether a petitioner has made a prima facie case for relief. (Stats. 2021, ch. 551, § 2.)

952, that the trial court erred by failing to appoint counsel for Sparks and by ruling on whether Sparks had established a prima facie case without first allowing the People and Sparks to submit briefing.

Accordingly, the sole issue presented in this appeal is whether the trial court's error was prejudicial. In *Lewis*, our Supreme Court held that "the deprivation of [a petitioner's] right to counsel under subdivision (c) of section 1170.95 [is] state law error only, tested for prejudice under *People v. Watson* (1956) 46 Cal.2d 818." (*Lewis*, *supra*, 11 Cal.5th at pp. 957-958.) Therefore, "a petitioner 'whose petition is denied before an order to show cause issues has the burden of showing "it is reasonably probable that if [he or she] had been afforded assistance of counsel his [or her] petition would not have been summarily denied without an evidentiary hearing." ' " (*Id.* at p. 974.) We thus turn to the question of whether it is reasonably probable that Sparks would be able to state a prima facie case for relief were we to direct the trial court to appoint counsel and allow briefing.

C. *Based on the Jury Instructions and Verdict Forms, There Is No Reasonable Probability of a Different Outcome Were the Trial Court to Appoint Counsel for Sparks and Allow Briefing*

An individual is eligible to seek relief under section 1170.95 only if the individual is "[a] person convicted of felony murder or murder under a natural and probable consequences theory." (§ 1170.95, subd. (a).) Sparks does not contend that he was convicted of felony murder. However, he argues that if counsel were appointed he could make a prima facie case that he may have been convicted based on the natural and probable consequences doctrine. We therefore examine Sparks's argument to assess whether it would be meritorious if it were made by appointed counsel on remand.

9

1. *The Jury Was Instructed It Could Convict Sparks Either Based on a Direct Aiding and Abetting Theory or Under the Natural and Probable Consequences Doctrine*

"[A]n aider and abettor's liability for criminal conduct is of two kinds. First, an aider and abettor with the necessary mental state is guilty of the intended crime." (*People v. McCoy* (2001) 25 Cal.4th 1111, 1117 (*McCoy*).) This type of liability is often referred to as "*direct* aiding and abetting liability." (*Gentile*, *supra*, 10 Cal.5th at p. 844, italics added.) "Second, under the natural and probable consequences doctrine, an aider and abettor is guilty not only of the intended crime, but also 'for any other offense that was a "natural and probable consequence" of the crime aided and abetted.'" (*McCoy*, at p. 1117.) Thus, for example, under the natural and probable consequences doctrine prior to the enactment of Senate Bill 1437, "if a person aid[ed] and abet[ted] only an intended assault, but a murder result[ed], that person may be guilty of that murder, even if unintended, if it [was] a natural and probable consequence of the intended assault." (*McCoy,* at p. 1117.) "Unlike direct aiding and abetting liability, culpability under the natural and probable consequences theory does not require an accomplice to share the direct perpetrator's intent. Instead, '[a]ider and abettor culpability under the natural and probable consequences doctrine is vicarious in nature' and ' "is not premised upon the intention of the aider and abettor to commit the nontarget offense because the nontarget offense" ' may not be intended at all." (*Gentile*, *supra*, 10 Cal.5th at p. 844.)

Here, the jury was instructed that it could find Sparks guilty of first degree murder as a direct aider and abettor of that crime.[7] However, it is

_____

[7]     Specifically, the jury was instructed, "The persons concerned in the commission . . . of a crime who are regarded by law as principals in the crime

10

undisputed that the jury was *also* instructed that it could find Sparks guilty of first degree murder under the natural and probable consequences doctrine.[8]

As Sparks contends, "based on the given jury instructions and verdicts, . . . at a minimum, there was at least a reasonable likelihood that one or more jurors determined [Sparks] was vicariously liable for first degree murder, as an aider-abettor of, or a conspirator with respect to, an uncharged and unspecified target offense (e.g., assault with a firearm) other than murder, via operation of the 'natural and probable consequences' . . . doctrine." (Italics omitted.) Therefore, according to Sparks, the trial court's error in failing to appoint counsel and allow briefing was prejudicial because, if counsel were appointed, counsel could make a prima facie case that Sparks is eligible for relief under section 1170.95 in that he may have been convicted under the natural and probable consequences doctrine.

---

thus committed . . . and equally guilty thereof include:  [¶] . . . [¶]  2.  Those who, with knowledge of the unlawful purpose of the person who directly and actively commits . . . the crime, aid and abet in its commission . . . ."

[8]     The jury was instructed on the natural and probable consequences doctrine both in the context of aiding and abetting and in the context of conspiracy, as "[t]he natural and probable consequences doctrine applies equally to aiders and abettors and conspirators." (*People v. Covarrubias* (2016) 1 Cal.5th 838, 901.)  In an aiding and abetting context, the jury was instructed: "One who aids and abets is not only guilty of the particular crime that to his knowledge his confederates are contemplating committing, but he is also liable for the natural and reasonable or probable consequences of any act that he knowingly aided or encouraged."  In a conspiracy context, the jury was instructed: "Every conspirator is legally responsible for an act of a coconspirator that follows as one of the probable and natural consequences of the object of the conspiracy even though it was not intended as a part of the original plan and even though he was not present at the time of the commission of such act."

11

To evaluate Sparks's argument, we look to the relevant jury instructions and verdict forms.

2. *The Jury Instructions and Verdict Form for the First Degree Murder Count*

As we have explained, the jury was instructed regarding the natural and probable consequences doctrine, but it was also instructed on the theory of direct aiding and abetting. (See fns. 7 & 8, *ante*.) The verdict form for the first degree murder count states,

> "We, the Jury in the above-entitled cause, find the Defendant Wendell Herbert Sparks, guilty of a felony, to wit: a violation of California Penal Code Section 187 (MURDER) as charged in Count One of the Information.

> "We further find the murder to be First Degree in that it was an intentional deliberate and premedi[t]ated killing with express malice aforethought.

> "We further find the murder to be First Degree in that the killing was immediately preceded by lying in wait." (Capitalization omitted.)

As Sparks points out, because the verdict form is phrased in the passive voice, the jury was not required to find that *Sparks himself* intended to commit murder, and thus the jury may have convicted Sparks on a natural and probable consequences theory. Specifically, the verdict form states that "the *murder* . . . was an intentional deliberate and premedi[t]ated killing with express malice aforethought" (italics added), not that *Sparks* acted with premeditation and deliberation and with express malice aforethought. Further, the verdict form states that "the killing" was immediately preceded by lying in wait, not that *Sparks himself* engaged in lying in wait with the intent to commit murder. We agree that the verdict form for the murder count does not specify whether Sparks was convicted as a direct aider and abettor or based on the natural and probable consequences doctrine.

12

However, as we will explain, other findings made by the jury, along with the applicable jury instructions, establish that Sparks was convicted as a *direct* aider and abettor who acted with the intent to kill, rather than as an aider and abettor whose guilt arose under the natural and probable consequences doctrine based on a target offense *other than* murder.

3.      *The Special Circumstance Findings*

With respect to both of the alleged special circumstances (i.e., lying in wait and murder for financial gain), the jury was instructed: "If defendant, Wendell Sparks, was not the actual killer, it must be proved beyond a reasonable doubt that he intentionally aided, abetted, counseled, commanded, induced, solicited, requested or assisted the actual killer in the commission of the murder in the first degree before you are permitted to find the alleged special circumstances of that first degree murder to be true as to defendant, Wendell Sparks." The jury found both of the special circumstances to be true.

In light of this jury instruction, because the jury made true findings on the special circumstances, it also necessarily found that Sparks (although not the actual killer) "intentionally aided, abetted, counseled, commanded, induced, solicited, requested or assisted the actual killer in the commission of the murder in the first degree." Such a finding is incompatible with a conviction of first degree murder based on the natural and probable consequences doctrine because it requires a finding that Sparks intentionally participated *in the commission of first degree murder*, rather than that Sparks intentionally participated *in a different crime*, the natural and probable consequence of which was murder.

Sparks disputes this reasoning based on the wording of the jury instruction. He argues that "the instruction focuses on [Sparks's] conduct,

13

and not on his state of mind, as an aider-abettor, etc., and does *not* require that [Sparks] shared the actual killer's specific intent to kill the victim or that [Sparks] otherwise had any such specific intent to kill." We disagree. The instruction expressly requires a finding that Sparks *intentionally* participated in the commission of murder, and thus requires a finding that Sparks acted with specific intent.[9] Sparks was accordingly convicted as a *direct* aider and abettor of murder, not as someone whose guilt derived from his intent to commit a *different* target offense based on the natural and probable consequences doctrine.[10]

---

[9] Indeed, in the 1987 Opinion, the court made exactly that observation, noting that the special circumstances instruction required the jury to find that Sparks acted with the intent to commit murder. Specifically, as the 1987 Opinion observed, Sparks's trial was held prior to our Supreme Court's holding in *People v. Beeman* (1984) 35 Cal.3d 547, 560 that a conviction based on aiding and abetting requires proof that an aider and abettor acted "with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense," not merely with knowledge of the actual perpetrator's purpose. (*Ibid.*). Thus, the jury was instructed with an erroneous CALJIC instruction that did not specify that an aider and abettor must have the *intent* required for the crime. The 1987 Opinion concluded that the instructional error was harmless because the special circumstances instruction required a finding of intent. As the 1987 Opinion explained, "The missing element of intent was filled in by the court's instructions on the special circumstances. The jury was instructed that in order to find the special circumstance true, 'it must be proved beyond a reasonable doubt that [defendant] intentionally aided, abetted, concealed, commanded, induced, solicited, requested or assisted the killer in the commission of the murder . . . .' (Emphasis added.) The jury found 'the murder was intentional and carried out for financial gain' and the 'defendant intentionally killed the victim while lying in wait.' The jury concluded defendant intentionally sought Linda Taylor's death."

[10] Sparks also argues that the specific jury instructions defining lying in wait and murder for financial gain did not unambiguously require the jury to

14

4. *The Jury Instructions and Verdict Form for the Charge of Conspiracy to Commit Murder*

Finally, the jury instructions and verdict form for the charge of conspiracy to commit murder also establish that Sparks was convicted of first degree murder as a direct aider and abettor rather than based on the natural and probable consequences doctrine.

With respect to conspiracy, the jury was instructed: "A conspiracy is an agreement entered into between two or more persons *with the specific intent to agree to commit the public offense of murder . . .* (and [or] obstruction of justice) as charged in count II [and] III and with the further specific intent to commit such offense/s followed by an overt act committed in this state by one (or more) of the parties for the purpose of accomplishing the object of the agreement. Conspiracy is a crime. In order to find a defendant guilty of conspiracy, in addition to proof of the unlawful agreement *and specific intent*, there must be proof of the commission of at least one of the overt acts alleged in the information." (Italics added.)

The jury found Sparks guilty of the offense of conspiracy to commit murder as follows: "We the Jury in the above-entitled cause, find the Defendant Wendell Herbert Sparks guilty of a felony, to wit: a violation of

---

focus on Sparks's own mental state, but might have focused the jury on the mental state of the person who committed the shooting. Sparks argues that, accordingly, the jury's true findings on the special circumstances are consistent with a murder conviction based on the natural and probable consequences doctrine. We need not entertain that argument, as any ambiguity as to Sparks's required mental state in the instructions for lying in wait and murder for financial gain are made irrelevant by the instruction we have quoted above that applies to *both* of the special circumstances. As we have explained, under that instruction, the jury was required to find that Sparks *intentionally* participated in the commission of murder as a prerequisite to making a true finding on either of the special circumstance allegations.

15

California Penal Code Section 182 (CONSPIRACY), in that said defendant did conspire, with others, to commit a crime, to wit:  a violation of Section 187 of the Penal Code as charged in Count Two of the Information."

Based on the jury instruction for conspiracy, the jury could not have convicted Sparks of conspiracy to commit murder unless it found he entered into an agreement "*with the specific intent* to agree to commit the public offense of murder."  (Italics added.)  Such a finding is incompatible with a conviction for first degree murder based on the natural and probable consequences doctrine, as the jury necessarily found that Sparks had the specific intent *to commit murder*, rather than merely to commit a lesser target offense, such as assault with a deadly weapon.  (See *People v. Verdugo* (2020) 44 Cal.App.5th 320, 325, review granted Mar. 18, 2020, S260493 [the court properly denied a section 1170.95 petition because the petitioner was convicted of conspiracy to commit murder, a specific intent crime], disapproved on another ground in *Lewis, supra*, 11 Cal.5th at p. 963.)

Sparks argues that the jury's verdict on the charge of conspiracy to commit murder does not reflect a finding that he had the specific intent to commit murder because the verdict form contains "awkwardly phrased and ambiguous language."  Specifically, Sparks argues that because the verdict form asked the jury whether it found that he "did conspire, with others, to commit a crime, *to wit:  a violation of Section 187 of the Penal Code* as charged in Count Two of the Information," a reasonable juror may have been confused by the phrase "to wit" and may have interpreted the verdict form "to

mean that a conspiracy to commit some crime (including a crime *other than* murder) caused or resulted in a murder and thereby violated [section] 187."[11]

The argument lacks merit. A reasonable person would not interpret the words "to wit: a violation of Section 187 of the Penal Code" [i.e., the statute criminalizing murder] to include a crime *other than* murder because the plain meaning of "to wit" indicates an *exact* and *precise* description of the subsequent term. As Merriam Webster's online dictionary states, "to wit" means "that is to say : NAMELY." (See <https://www.merriam-webster.com/dictionary/to%20wit> [as of Dec. 21, 2021], archived at <https://perma.cc/4CB7-LACN>.) As another dictionary explains, "To wit is used to indicate that you are about to state or describe something more precisely." (Collins English Dict. (online ed. 2021) <https://www.collinsdictionary.com/us/dictionary/english/to-wit> [as of Dec. 21, 2021], archived at <https://perma.cc/T7U3-5K55>.) Moreover, even if the verdict form could be interpreted as ambiguous, the jury instruction itself left no doubt about what the jury must find to convict Sparks of conspiracy to commit murder, namely, that Sparks entered into an agreement "with the specific intent to agree to commit the public offense of murder."

---

11   In addition, contrary to Sparks's contention, the natural and probable consequences instruction relating to coconspirators does not reduce the significance of the jury's finding of guilt on the charge of conspiracy to commit murder. The jury was instructed that "[e]very conspirator is legally responsible for an act of a coconspirator that follows as one of the probable and natural consequences of the object of the conspiracy . . . ." However, that instruction has no bearing on the issue of whether Sparks entered into a conspiracy with the specific intent to agree to commit murder. The jury indisputably found that Sparks possessed that specific intent.

17

5. *Sparks Has Not Shown There Is a Reasonable Probability of a Different Outcome If Counsel Were Appointed and Briefing Was Allowed*

As we have explained, in evaluating whether the trial court's error was prejudicial, our task is to determine whether it is reasonably probable that Sparks could obtain a better outcome were we to reverse the trial court's order and direct it to appoint counsel and allow briefing. (*Lewis*, *supra*, 11 Cal.5th at pp. 957-958, 974.)

Having examined the arguments that Sparks proposes to present on remand, we conclude that the jury instructions and the verdict forms preclude Sparks from making a prima facie case that he was convicted based on the natural and probable consequences doctrine. Based on the record of conviction, the jury found that Sparks *intentionally* participated in the commission of murder, and that Sparks entered into an agreement *with the specific intent* to commit murder. Therefore, the jury necessarily found that Sparks was guilty of first degree murder as a *direct* aider and abettor, rather than as someone who intended to aid and abet a *different* crime, the natural and probable consequence of which was murder.

Sparks contends that notwithstanding the jury instructions and verdict forms that we have reviewed, a different outcome is reasonably probable if we were to remand to allow appointed counsel to *further* develop the record of conviction. Specifically, Sparks argues that appointed counsel may be able to locate and rely upon the reporter's transcript reflecting the People's closing argument from the jury trial. As Sparks argues, "[p]resumably, the prosecutor who asked for and got the [natural and probable consequences] doctrine instructions, got mileage out of such instructions when arguing to [Sparks's] jury during closing argument on alternative theories for convicting [Sparks]." The argument lacks merit. Regardless of whether appointed

18

counsel could develop the record of conviction to show that the People focused on the natural and probable consequences doctrine during closing argument, the jury instructions and verdict forms conclusively establish that the jury found Sparks guilty as a direct aider and abettor of murder.[12]

We accordingly conclude that the trial court's error in failing to appoint counsel and allow briefing was not prejudicial, as there is no reasonable probability that Sparks could make a prima facie case for relief under section 1170.95, even were we to remand and direct the trial court to follow the procedures for deciding a prima facie case described in *Lewis*, *supra*, 11 Cal.5th 952.

---

[12]   In a vague and undeveloped argument, Sparks also suggests that appointed counsel might be able to establish a prima facie case by making an offer of proof as to testimony that could be presented were the trial court to issue an order to show cause. However, Sparks fails to explain what sort of testimony could possibly negate the jury's findings that Sparks intentionally participated in the commission of murder and entered into an agreement with the specific intent to commit murder.

## DISPOSITION

The order denying Sparks's petition for relief under section 1170.95 is affirmed.

IRION, J.

WE CONCUR:

HUFFMAN, Acting P. J.

DATO, J.